GUERNSEY COUNTY (COM'RS) v. CAMBRIDGE (VILLAGE).

1. JUDGMENT CANNOT BE VACATED UNTIL TRIAL DISCLOSES A VALID DEFENSE.

Upon the hearing of a motion to vacate a judgment, at a term subsequent to its rendition, for irregularity in obtaining the same, it is error for the court to vacate and set aside such judgment before it has been determined, by a trial upon the merits, that the defense is valid, and the plaintiff not entitled to such judgment.

2. IRREGULARITY IN OBTAINING JUDGMENT WHICH AUTHORIZES VACATION.

An irregularity, within the meaning of the third sub-division of sec. 5354, Rev. Stat., is some act done, or step taken, by the court, either *sua sponte*, or upon request, or by an officer thereof, which is not according to the regular course of procedure, and by which a party was deprived of the benefit of a defense to the action, without fault on his part.

3. IRREGULARITY IN ACTION OF COUNCIL IN EFFECTING SETTLEMENT IS NOT.

Where the judgment entered was one of settlement of the litigation by agreement, informalities and irregularities in the action of the village council in the appointment of a committee to effect such settlement, and in acceding to and ratifying the terms thereof, are not irregularities within the meaning of the statute which will authorize a conditional suspension of such judgment.

4. ACTION OF COUNCIL COMPROMISING LITIGATION NOT GENERAL.

Such settlement is not a transaction of a "general or permanent nature" within the purview of sections 1694-1695, Rev.Stat., but is one of a special character and temporary nature; and an ordinance, or formal resolution is not required to be passed, signed and recorded, to make the same valid as provided in these sections.

5. PRELIMINARY STEPS NEED NOT BE FORMAL, IF MAIN OBJECT IS FORMALLY ADOPTED.

In such case, although such settlement, abstractly considered, would require a majority vote of all the members elected to adopt it, under sec. 1693, Rev. Stat., neither an ordinance, formal resolution, nor resolution in any particular words, is requisite. Formal accuracy in such records is not required; if the intent is manifest, it is sufficient; and such intent is to be gathered from the whole record in the matter, and not from any particular or distinct part. In such case, it is not necessary that each step taken by the council should be done in strict conformity with law; it is sufficient if the main object to be accomplished is formally acted upon, and adopted by such majority, by a yea and nay vote.

6. APPOINTMENT OF COMMITTEE TO COMPROMISE MAY BE INFORMAL.

The appointment of a committee, in such case, was not required to be made by such formal resolution, nor by a yea and nay vote, nor by an affirmative vote of a majority of all the members elected, as it was not a contract, agreement, or obligation, and therefore not subject to the provisions of said sec. 1693.

7. WORKHOUSE DIRECTOR IS INELIGIBLE AS COUNCILMAN.

A member of a board of work-house directors of a municipal corporation is an officer, and holds an office, within the meaning of the constitution, and is ineligible to the office of councilman in such corporation, under sec. 1681, Rev. Stat., while holding such office of work-house director; and his election and induction into the office of councilman while holding the office of, and acting as, such work-house director, is illegal and void.

8. DE FACTO COUNCILMAN AS PART OF MAJORITY.

In such case, in acting as such councilman, such person would be a member de facto, but not de jure; and while his acts, as such de facto member, would be sufficiently legal to uphold acts done through his aid, whether a court must count him as a member, in ascertaining the aggregate number of members of such council, in an attempt to defeat an act done by such council by showing that the resolution of the council under which such act was authorized or ratified, although declared carried by the presiding officer, was not passed by the requisite majority by reason of the adverse vote of such de facto member, is another question, and as to which, query?

Semble: If the legally elected members are less than the entire number of which the council might consist, the majority of such legal members is a majority of the council.

9. COMPROMISE BY CITY NOT SET ASIDE BECAUSE OF OPPOSING VOTE OF ILLEGAL MEMBER OF COUNCIL.

The jurisdiction exercised by the court in hearing a motion to vacate a judgment for irregularity in obtaining the same, after the term at which it was rendered, is equitable in character, and equitable principles should govern in its disposition; and, therefore,

ın the case stated in paragraph eight hereof, if such resolution was necessary to the validity of the aforesaid settlement, it would not be just or equitable to allow it to be impeached long after the parties apparently considered the matter ended, and to the prejudice of the plaintiffs, because of the opposing vote of such illegal member.

10. COUNCIL CANNOT TAKE ADVANTAGE OF VOTE OF ILLEGAL MEMBER.

Where the ground on which the defendant's right to relief depends, is its own wrongful conduct in not obeying the law in the transaction of its business, and in allowing a person to participate in the transaction thereof who could do so only by violating the law of the state and of its creation, whatever remedy it may be entitled to, certainly it is not entitled to the remedy here sought.

Error to the Court of Common Pleas of Guernsey county.

LAUBIE, J.

The action was originally brought to obtain an injunction restraining the village from occupying a portion of a lot in the center of the town of Cambridge, whereon the court-house and jail stand, and the exclusive ownership whereof the county claimed, the village being about to erect a town-hall on the north end of the lot. Such proceedings were had that, on December 19, 1888, an entry was made by the common pleas as follows:

This day this cause came on for hearing, and the plaintiff and defendant being present in court, it is suggested to the court by both parties hereto that this cause is settled upon the following terms:"

Then followed a statement of the terms of settlement, which related to the manner of the future use of the lot mentioned, and a judgment against the commissioners for the costs, and concluded: "Whereupon it is ordered by the court that said cause be and the same is hereby settled according to the terms above set forth." On December 31, 1889, the village filed its motion in the common pleas to vacate and set aside the judgment referred to, and for a new trial, for the following reason: "Irregularity in the proceedings of the court in obtaining the aforesaid judgment. That such irregularities consisted in this: that there never was any resolution or ordinance passed by council of the defendant authorizing the settlement of said cause; that the whole proceedings of said council in reference thereto was conducted by informal motions which were irregularly passed by said council, and therefore conferred no authority on the committee to settle said case; that there never was any ratification by said council of said settlement; that there never was any resolution or ordinance passed by said council authorizing the appointment of said committee which undertook to make settlement of said cause." Copies of the records of council's proceedings were attached as exhibits to said motion, and included in the bill of exceptions.

From these exhibits it appears that at its meeting of July 17, 1888, "Mr. Anderson moved that a committee of three be appointed to make a settlement with the county commissioners in regard to the Town Hall case now pending in court, and further to make report on a new location for engine-house and council chamber, which was carried unanimously. The chair appointed Messrs. Anderson, Raymond and Giffen, the aforesaid committee." Adjourned to meet July 23. At the meeting of July 23, "Mr. Anderson as chairman of special committee appointed to see defendants (plaintiff) in reference to the Town Hall case, reported that said committee had had a conference with the commissioners' attorney, and proposed to him if the commissioners would pay costs now accrued and remove small buildings now on the premises and grade the ground and put in grass, that the committee would be in favor of withdrawing the suit. Motion by Mr. Gardiner that the above report be received and approved, and said committee be authorized to settle the case accordingly. Carried. Motion by Mr. Anderson that the above committee be continued and required to make a further report at the next meeting of council. Carried. Motion to adjourn to meet Monday, July 30, at 8 P. M. Carried. At meeting of July 30, "Motion by Mr. Giffen to reconsider the motion adopting the report of the committee on settling the case of County Commissioners against Cambridge corporation. Motion by Mr. McCollum to lay the above motion on the table until next meeting. Lost. Vote taken on the original motion. Messrs. Giffen, Harris, Quinn and Whissel, aye, 4 votes; Messrs. Gardiner and McCollum, no; two votes; carried. Motion to lay the aforesaid motion on the table; carried. Motion to adjourn; carried." At the regular session, August 6, "Motion by Mr. Anderson that the report of the committee appointed to settle Town Hall case be taken from the table. Vote taken: Anderson, Gardiner, McCollum, Quinn, Raymond, aye, five votes; Messrs. Giffen and Whissell, no, two votes; carried. Motion to adopt the above report; vote taken; Messrs. Anderson, Gardiner, McCollum, Quinn and Raymond, aye, five votes; Messrs. Giffen and Whissel, no, two votes; carried. Motion to reconsider the vote adopting the report of the committee appointed to settle Town Hall case; vote taken: Messrs. Giffen and Whissel, aye, two votes; Messrs. Anderson, Gardiner, McCollum, Quinn and Raymond, no: five votes; lost." At the meeting of March 13, 1889, "The committee appointed

to settle the Town Hall case made the following report, viz." (Here follows the journal entry above referred to, including proper caption.) These words were at the foot of the entry: "Recorded, vol. 20, page 450. Respectfully submitted, T. H. Anderson, F. K. Raymond, Committee." Thereupon "Motion by McCollum, second by Quinn, to receive and adopt the above report; ayes, Anderson, McCollum, Quinn and Raymond, four votes; nays, Harris and Whissel, two votes. The chair decided the motion carried. Mr. Whissel enters protest against the chair's ruling on the above motion. Motion to adjourn to meet March 15, 1889, at 7:30 P. M., carried." At meeting of April 2 the minutes of the March meeting were read and approved." It was further shown that the council at said times consisted of eight members; that the foregoing was a true and exact history of all action of said council looking to settlement of said case; that no other action was taken with reference thereto; and that at the time said I. N. Whissel was elected and sworn in as a member of said council, and at the time the several votes were taken as above stated, he was director of the work-house of the incorporated village of Cambridge.

The court of common pleas entered a ruling sustaining said motion "to set aside and vacate the judgment and decree heretofore entered and made in this case"; but did not find that there was a valid defense, nor order the defense to be tried, nor suspend the judgment. The commissioners prosecuted error to the circuit court, which refused to pass upon the questions raised for the reason that no final order had been entered as to which error could be assigned. Accordingly the case went back to the common pleas, whereupon the village on March 3, 1892, moved the court "to order and direct that this case be set down for final trial at a convenient time, and that the same be proceeded in to final judgment for the reason that the court has heretofore adjudged that the motion to vacate the decree herein ought to be sustained." This motion was sustained, and afterward the case was submitted upon the pleadings and the evidence, and the court found that the village presented a valid defense, and ordered and adjudged that the decree of settlement "be vacated, set aside and held for naught, a new trial granted in said case, and that defendant recover of plaintiff its costs made in this proceeding, taxed at $——." A bill of exceptions was taken, and this petition in error filed, wherein the following errors are assigned: (1.) "Said court of common pleas erred in ordering 'said cause to be set down for trial as to the validity of the defendant's defense,' pursuant to the motion of defendant filed March 3, 1892. (2.) Sa'd court erred in hearing testimony as to the truth of the facts alleged in the defendant's defenses, and adjudging that plaintiff pay the costs of such hearing. (3.) Said court erred in ordering and adjudging that the judgment and decree, referred to in the motion filed herein December 31, 1889, be vacated and set aside, and in granting a new trial of the action in which said judgment and decree were entered. (4.) The court had no jurisdiction of the subject-matter of the motion filed herein December 31, 1889. (5.) For other reasons apparent upon the face of said record." ·

It thus appears that the court of common pleas did not dispose of the defense on its merits, but determined only that the defendant had presented a valid defense; and thereupon vacated the decree of settlement, and set the case down for trial upon the merits. It required no evidence to determine whether the defendant presented a valid defense to the action—an inspection of the answer filed, would determine that.

The proper practice is, after the irregularity in obtaining the judgment is established, for the court to conditionally suspend the judgment until the question of the validity of the defense is tried by the court, or by a jury, as the case may require; and then vacate or modify the judgment, if the defense is established. Braden v. Huffman, 46 O. S., 639.

The more important question in the case, however, is whether the facts showed any irregularity in obtaining the judgment, within the meaning of the third subdivision of sec. 5354, Revised Statutes.

An irregularity, within the intent of the statute, is some act done, or step taken, by the court, either *sua sponte*, or upon request, or by an officer thereof, which is not according to the regular course of proceeding, and by which a party was deprived of the benefit of a defense, without fault on his part.

The object and intent of the enactment was to enable a party to make defense after judgment, where he thus had been deprived of the opportunity of making it before judgment, without fault on his part. Bank v. Doty, 9 O. S., 505, 510.

It is therefore necessary that the irregularity be such as deprived the party of the benefit of making his defense before judgment, and such deprivation is, therefore, an essential part of a definition of such statutory irregularity.

The party must have had a good defense, as it could not be said that he had been deprived of making a defense when he had no valid defense to make. So it must appear that he did not participate in the act complained of, or know that it was to be done in time to resist it, as it could not be said that he had been prevented from making defense by an act which he assisted in doing, or as to which he had prior knowledge. It must be such an irregularity as has not been superinduced by the fault or negligence of the party himself. McKee v. Bank, 7 O., 175; Huntington v. Finch, 3 O.S., 445.

This is intimately connected with the other part of the definition, that the act done, or step taken, must have been by the court, or by an officer thereof.

Here the irregularity complained of was not in the action of the court, or any of its officers, but in the action of the village council, and thus that of the defendant itself. Instead of the judgment having been obtained without the knowledge, fault or negligence of the defendant, the defendant itself showed that it had taken action to that very end, in connection with the plaintiffs. Unlike the case of an attorney—an officer of the court—who appears representing himself to have authority when in fact he has none, a committee of the council of the village had been appointed for the very purpose of effecting a settlement of the case, and had procured it to be settled, and the judgment to be entered after reporting the substance of the settlement to the council for its approval, and it matters not that there may have been some irregularity in the action of the council in reference to the matter. The right to the relief asked for by the defendant, as appears from the motion, evidence and claim of counsel, was based not upon the ground that the council had not in fact appointed the committee to settle the litigation nor yet upon the ground that such committee had exceeded its authority, but solely upon the ground of informalities on its part in the appointment of the committtee, and the adoption of the report.

But if it could be possible that we are mistaken in this, what irregularity in the action of the village council in the appointment of the committee, or want of legal authority on the part of the committee to make a settlement of record, or irregularities on the part of the village council in regard to the matter in any other respect material to the inquiry, was there shown by the evidence?

It is not, and cannot be claimed that the record does not show that the village council intended and attempted to appoint the committee, and to settle the litigation upon the terms specified in the judgment; but the claim in particular is, that the action of the council was informal, in that there was no ordinance or formal resolution passed and adopted for the purpose in accordance with the requirements of sec. 1694, 1695, Rev. Stat.; that the yeas and nays were not called, nor did a majority of all the members elected to the council vote for the settlement.

Certainly, it is not a transaction of a "general or permanent nature," within the purview of these sections, but one of special character and temporary nature—the settlement of a dispute as to the right of the village to build structures upon a particular spot of ground. Therefore an ordinance, or formal resolution, was not required to be passed, signed and recorded, as provided in these sections.

Even if the settlement was a matter which, under sec. 1693, Rev. Stat., would require a majority of all the members elected to adopt it, no ordinance or formal resolution or special set of words, was requisite.

As to the appointment of the committee, this was not an action calling for a formal resolution, nor for a vote by yeas and nays, nor for an affirmative vote of a majority of all the members elected, as it was not an entering into a contract, agreement or obligation, within the meaning of said sec. 1693—the committee was appointed merely to ascertain and report the terms, upon which the case could be settled; and that it was so understood, is evident from the subsequent action of the committee and the council, whatever may have been the wording of

the appointment as entered by the clerk in the minutes. Formal accuracy is not to be looked for or required in such records; it is sufficient if the intent is manifest, and such intent is to be gathered from the whole record in the matter, and not from any particular or detached part. Lewis v. Laylin, 46 O. S., 663, 666.

However, if any irregularity had occurred in the action of the village council in the matter, it was cured by its action at the meeting of August 6, 1888. At that meeting, the report of the committee was taken from the table and adopted by a yea and nay vote of five to two; and thus a resolution, sufficient in form, was put to a regular vote at a regular meeting of the council, and upon a call of the yeas and nays a majority of all members elected voted for it, assuming that the council consisted of eight members elected.

It was not necessary that each step taken by the council in the business should be done in strict conformity with law; it was sufficient if the main object was properly acted upon and adopted by a majority of all the members elected by a yea and nay vote. In adopting the report of the committee the main object to be accomplished was properly acted upon, and that was all that was necessary. Cincinnati v. Bickett, and Lewis v. Laylin, *supra*.

It is claimed for the village, that final action of the council on the whole subject was taken at its meeting in March, 1889, when the committee reported the entry that had been made by the court; and as but six members were present, of whom but four voted for adopting the report, there was no legal adoption or ratification of the settlement for lack of a majority of all the members elected favoring the action. We cannot understand how an action of the council after the meeting of August 6, 1888, and subsequent to the final action of the court in the case could affect the judgment which the court had entered, especially when the entry showed that the parties had appeared and requested the judgment to be entered. But passing this, were there eight legal members of the council? It appears that Mr. Whissel was a director of the corporation workhouse at the time he was elected and sworn in as councilman, and during all the time thereafter up to and including the day of said meeting, March 13, 1889, and if this was an office within the meaning of sec. 1681, Rev. Stat., it made him ineligible of filling the office of councilman at the same time.

Counsel for defendant claims that this is not an office within the meaning of the constitution, and, *inter alia*, because the statute provides that women shall be directors of work-houses, and as they are not competent to hold office under the constitution, a director of a work-house is not an officer within the meaning thereof.

In State v. Mrs. Rust, 2 Ohio Circ. Dec., 577, it was held that a director of a work-house is an officer, and holds an office, within the meaning of the constitution and laws of the state; that women are incapable of holding office in this state, and, consequently, that that part of the statute providing for their becoming or acting as such directors, is unconstitutional and void. With this opinion we are in perfect accord. If a trustee of a municipal hospital, or a member of a decennial board of equalization, is an officer, as decided in State v. Kearns, 47 O. S., 566, we are satisfied that a director of a work-house is also, and the election of Mr. Whissel to the office of councilman was a nullity, and he was not a legal member of the council at the time of casting the votes referred to.

In State v. Kearns, *supra*, it was held that the appointment of a member of council to another office does not work an abandonment of his office as councilman, but that the appointment to such other office is absolutely void; and we think the converse of this is equally correct—that the election to the office as councilman of one who, at the time of his election and induction into such office, hold another office in the corporation, is absolutely void, when there is no abandonment of such other office.

Vol. III, C. C.  43

**Mr.** Whissel may have been a member of council *de facto*, but he certainly was not *de jure*. His acts as such *de facto* member would be sufficiently legal to uphold acts done through his aid, but whether the court must count him as a member, in ascertaining the aggregate members of the council elected, in an attempt to defeat an act done by such council by showing that the resolution under which said act was authorized, or ratified, was not passed by the requisite majority, and where the presiding officer had declared the resolution adopted, notwithstanding the adverse vote and protest of the *de facto* member, is another question.

At all events, it is a matter that is not entitled to favorable consideration at the hands of the court in a case like the present one.

In Critchfield v. Porter, 3 O., 520, 523, and in Huntington v. Finch, 3 O. S., 445, 448, it was held that the power to vacate judgments upon motions, for irregularities in obtaining the same, after the term at which they were rendered, was inherent in courts of law of general jurisdiction, and that jurisdiction in such cases is equitable in its character, and that equitable principles should govern in their disposition.

The statute invoked herein, therefore, simply embodies the law as it existed prior to its enactment, and in no sense changes the character of the jurisdiction in such cases; and the authorities cited above have been approved without any qualification by reason of the passage of the act. Bank v. Doty, 9 O. S., 506, 510; Braden v. Hoffman, 46 O. S., 639, 641.

Here, but for the vote a man who was not legally entitled to vote, because not a legal member of the council, the action of that body in adopting and ratifying the action of the committee, as declared by its presiding officer and entered upon the recorded minutes of the council, could not be questioned; and if it was necessary to the validity of the settlement made, it would not be just or equitable to impeach it because of the opposing vote of such illegal member, long after the parties apparently considered the matter settled, and to the prejudice of the plaintiffs.

Indeed, the whole ground on which the defendant bases its right to relief, is its own wrongful conduct in not obeying the law in the transaction of its business, and in allowing a person to participate therein who could do so only by violating a law of the state and of its creation; and whatever remedy the defendant may be entitled to, it is clear it is not the remedy here sought. Critchfield v. Porter; Huntington v. Finch; McKee v. Bank, *supra*.

Judgment reversed, and the motion of the defendant overruled at its costs, and remanded for execution.

Mathews & Heade, for Commissioners.

Troette & Weyer, for the Village.